IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| JOHN LAETTNER, et al., | |
| Plaintiffs, | 4:15-CV-3123 |
| vs. | |
| JOSEPH KISHIYAMA and CHALOUPKA, HOLYOKE, SNYDER, CHALOUPKA, HOFFMEISTER & KISHIYAMA, PC LLO, | MEMORANDUM AND ORDER |
| Defendants. | |

    Nebraska's dormant mineral statutes, Neb. Rev. Stat. § 57-228 *et seq.*, provide that a severed mineral interest shall be considered abandoned if, for a period of 23 years, its "right of ownership" is not publicly exercised by its record owner. *Ricks v. Vap*, 784 N.W.2d 432, 433 (Neb. 2010). If a severed mineral interest is abandoned, the owner of the surface estate can sue to terminate the mineral interest. *Id.*

    The issue in this legal malpractice case is whether the plaintiffs would have succeeded in their state court appeal from a state trial court order declaring that their mineral interests had been abandoned. The Court finds that had the defendants properly appealed, the Nebraska appellate courts would have affirmed the trial court's order. Accordingly, the Court will dismiss the plaintiffs' complaint.

BACKGROUND

    The plaintiffs in this case are the various heirs of Charles Williams, Sr. and Laverne Davison, who in life had owned mineral interests in certain Sioux County, Nebraska real estate. Filing 39 at 4-5.[1] One of the plaintiffs, Donald Williams, inherited his mineral interests directly from Charles Sr. and Davison—his parents—at their deaths, in 1938 and 1981 respectively.

---

[1] Pursuant to NECivR 56.1, a party moving for summary judgment must include in its brief a statement of material facts about which the movant contends there is no dispute, and the party opposing summary judgment must include in its brief a concise response to that statement of facts, noting any disagreement. Properly referenced material facts in the movant's statement are considered admitted unless controverted in the opposing party's response. NECivR 56.1(b)(1).

Filing 39 at 5. The other plaintiffs inherited through Donald's sister, Ila Mullenix, who had inherited from her parents in 1938 and 1981, but died in 2005. Filing 39 at 4-5.

In 2011, Gale Henry filed a state court complaint against Donald, Ila, and several other individuals, to have their mineral interests declared abandoned. Filing 38-8 at 2-4. (Ila was deceased by that time, but for reasons that will become clear below, Gale didn't know that.) Donald answered, and the remaining plaintiffs in this case—Ila's heirs—intervened. Filing 38-8 at 6-9. The matter progressed to a bench trial. Filing 38-3 at 42. The plaintiffs were represented by the defendants in the instant case: Joseph Kishiyama and his law firm of Chaloupka, Holyoke, Snyder, Chaloupka, Hoffmeister & Kishiyama. Filing 38-3 at 42; filing 39 at 5. The state trial court found that the plaintiffs' mineral interests had been abandoned. Filing 39 at 5.

Specifically, the trial court rejected the plaintiffs' argument that Henry could not pursue a claim to terminate the severed mineral interests to the property because he only held a life estate in the property. Filing 38-5 at 44. The trial court reasoned that the holder of a life estate is still an "owner . . . of the surface of real estate" within the meaning of § 57-228. Filing 38-5 at 44-45. The trial court also found that Henry was not required to join all the other surface owners to bring the claim, because § 57-228 specifically permits the surface interest owner to prosecute a claim "on behalf of himself and any other owners of such interest in the surface . . . ." Filing 38-5 at 45. The trial court found that Ila's heirs were not "record owners" of the mineral interests because no recorded instrument identified them as such, so they could not—and had not—publicly exercised ownership of the mineral interests so as to prevent abandonment. Filing 38-5 at 47-49. And the trial court found that while Donald was a record owner, he had not publicly exercised his rights either. Filing 38-5 at 49.

Kishiyama and his firm timely appealed on the plaintiffs' behalf, but the appellate transcript they ordered did not include a default judgment that had been entered against other mineral interest owners who had not answered Henry's complaint. Filing 39 at 5-6. It appeared to the Nebraska Court of Appeals that the trial court had not ruled on all the claims against all the parties, so the Court of Appeals entered an order to show cause why the appeal should not be dismissed for lack of a final, appealable order. Filing 38-7 at 1; filing 39 at 6. Kishiyama did not respond to the show cause order. Filing 39 at 6. So, the Court of Appeals dismissed the appeal in November 2013. Filing 39 at 6. Kishiyama attempted to perfect another appeal in August 2015, but his attempts were rebuffed by both the trial court and the Court of Appeals. Filing 39 at 6; *see* filing 38-10 at 4-16.

- 2 -

In the instant case, the plaintiffs are suing Kishiyama and his former law firm under Nebraska law for legal malpractice—specifically, negligence in failing to perfect their appeal from the trial court's judgment. Filing 1. In Nebraska civil legal malpractice actions, a plaintiff alleging attorney negligence must prove three elements: (1) the attorney's employment, (2) the attorney's neglect of a reasonable duty, and (3) that such negligence resulted in and was the proximate cause of loss (damages) to the client. *New Tek Mfg., Inc. v. Beehner*, 702 N.W.2d 336, 346 (Neb. 2005). In such an action, the plaintiff must show that he or she would have been successful in the underlying action but for the attorney's negligence. *Id.*

The parties have cross-moved for summary judgment as to liability, asking the Court to determine as a matter of law whether the plaintiffs would have been successful in the underlying state court appeal.[2]

STANDARD OF REVIEW

Summary judgment is proper if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). The movant bears the initial responsibility of informing the Court of the basis for the motion, and must identify those portions of the record which the movant believes demonstrate the absence of a genuine issue of material fact. *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc). If the movant does so, the nonmovant must respond by submitting evidentiary materials that set out specific facts showing that there is a genuine issue for trial. *Id.*

On a motion for summary judgment, facts must be viewed in the light most favorable to the nonmoving party only if there is a genuine dispute as to those facts. *Id.* Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the evidence are jury functions, not those of a judge. *Id.* But the nonmovant must do more than simply show that there is some metaphysical doubt as to the material facts. *Id.* In order to show that disputed facts are material, the party opposing summary judgment must cite to the relevant substantive law in identifying facts that might affect the outcome of the suit. *Quinn v. St. Louis County*, 653 F.3d 745, 751 (8th Cir. 2011). The mere existence of a scintilla of evidence in support of the nonmovant's position will be insufficient; there must be evidence on which the jury could conceivably find for the nonmovant. *Barber v. C1 Truck Driver Training, LLC*, 656 F.3d 782, 791-92 (8th Cir. 2011). Where the record taken

---

[2] To make sure the record is clear: while the parties have filed cross-motions for summary judgment, the "lead motion" is the plaintiffs', which the parties have fully briefed.

as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial. Torgerson, 643 F.3d at 1042.

## DISCUSSION

The plaintiffs argue that they would have been successful on appeal by asserting six assignments of error:

Error 1: The Trial Court Decided the Case Without Jurisdiction Because the Underlying Plaintiff Lacked Standing to Sue.
Error 2: The Trial Court Decided the Case Without All Necessary Parties Present. This was a Jurisdictional Flaw.
Error 3: The District Court Failed to Appreciate [Ila's heirs] Had 23 Years from Their Mother's Death to Act.
Error 4: The District Court Erred When It Failed to Recognize that the Interests of [Donald] Acquired before 1968 Were Not Subject to the Abandoned Mineral Interests Statute Enacted In 1967.
Error 5: The District Court Erred When It Failed to Recognize that the Interests [Ila] Acquired Before 1968 Were Not Subject to the Abandoned Mineral Interests Statute Enacted In 1967.
Error 6: Neb Rev Stat § 57-229 Derogates the Common Law. The District Court Erred in When It Failed to Strictly Construe the Statute.

Filing 39 at 4. The Court will consider each of the plaintiffs' assignments of error in turn.

## STANDING

The plaintiffs' standing argument is essentially a recasting of their argument to the trial court that Henry, seised of a life estate, could not bring an action under the dormant mineral statutes.

Section 57-228 provides that "[a]ny owner or owners of the surface of real estate from which a mineral interest has been severed, on behalf of himself and any other owners of such interest in the surface, may sue" to have a severed mineral interest terminated. The plaintiffs' first argument is that the owner of a life estate does not have a surface interest "from which a mineral interest has been severed." Filing 39 at 17. This, the plaintiffs say, is because "[t]he mere owner of a life estate, with no remainder interest, is the owner of a severed interest himself—the life estate being severed from the

remainder interest" and "fee title to mineral interests cannot merge in a fractional life estate interest in surface rights." Filing 39 at 17.

This is, to start with, too narrow a view of a life estate: it is well-established that a life estate can include mineral interests. *See*, *Weekley v. Weekley*, 27 S.E.2d 591, 593 (W. Va. 1943); *In re Estate of Womack*, 372 P.3d 690, 694 (Utah Ct. App. 2016) (collecting authorities). But more fundamentally, the Court is unpersuaded that the doctrine of merger of estate somehow precludes application of the dormant mineral statutes.

The doctrine of merger's general rule is that where two unequal estates vest in the same person at the same time without an intervening estate, the smaller is merged into the greater. *Landmark Enters., Inc. v. M.I. Harrisburg Assocs.*, 554 N.W.2d 119, 124 (Neb. 1996). The plaintiffs argue that because the mineral interest is the "greater" interest for these purposes—a fee simple estate—it cannot merge into the "lesser" life estate. Filing 39 at 17-18.

Merger, as applied in the context of mineral estates, is actually a complicated and uncertain area of law: there is a split of authority on whether, and under what circumstances, a surface estate and a mineral estate can merge. *See Medicine Lodge Invs., L.L.C. v. EAR, Inc.*, 197 P.3d 502, 509 n.13 (Okla. 2008) (collecting cases). As a general matter, division of the surface and mineral rights creates two estates, "which are as distinct as if they contained two parcels of land." *Slaaten v. Cliff's Drilling Co.*, 748 F.2d 1275, 1277 (8th Cir. 1984); *see Clay v. Mountain Valley Mineral P'ship*, 351 P.3d 961, 971 (Wyo. 2015). And furthermore, as a general matter, a surface estate is subservient to a mineral estate. *See*, *Slaaten*, 748 F.2d at 1277; *Entek GRB, LLC v. Stull Ranches, LLC*, 885 F. Supp. 2d 1082, 1088 (D. Colo. 2012). As a result, it has been held that the lesser surface estate merges into the dominant mineral estate. *Hunter v. Rosebud Cty.*, 783 P.2d 927, 929 (Mont. 1989). But it has also been held, to the contrary, that merger "applies to estates in land into which the original estate in fee simple may have been divided, as an estate for years or for life, and not to the different divisions of a tract of land, whether these divisions are horizontal or vertical." *Humphreys-Mexia Co. v. Gammon*, 254 S.W. 296, 301 (Tex. 1923). So, when surface rights and mineral rights are both held in fee, there cannot be merger. *See id.*

But the Court need not fully resolve those thorny issues to reach a more basic conclusion: the Nebraska dormant mineral statutes do not depend on merger. They simply provide that if the trial court finds that a severed mineral interest has been abandoned, "it shall enter judgment terminating and extinguishing it, canceling it of record, and vesting the title thereto in the owner or owners of the interest in the surface from which it was originally severed in the proportions in which they own such interest in the surface." §

57-230. Nothing about vesting title in the surface interest owners requires that their interests be merged.

It is, in fact, well-established that "in equity, the common law legal rule as to merger is not always followed, and the doctrine of merger is not favored." *Waite Lumber Co. v. Masid Bros., Inc.*, 200 N.W.2d 119, 122 (Neb. 1972). Merger does not always or necessarily result from a coinciding of two unequal estates. *Landmark Enters.*, 554 N.W.2d at 889-90. Whether merger occurs depends on the intention of the party acquiring the two estates, and "[i]t will be presumed, in the absence of circumstances indicating a contrary purpose, that he intended to do that which would prove most advantageous to himself." *Am. Sav. & Loan Ass'n v. Barry*, 243 N.W. 628, 630-31 (Neb. 1932).

In other words, if a party owns two estates in land, and merger is not intended or would be disadvantageous, then the result is not that conveyance of the estate is defeated—the result is simply that the party continues to own two separate estates. *See Wyatt-Bullard Lumber Co. v. Bourke*, 75 N.W. 241, 241-42 (Neb. 1898). The plaintiffs' contention that Henry "sued to have abandoned mineral interest merged into his life estate," filing 39 at 18, is simply not supported by the statutory scheme. It is entirely possible, pursuant to § 57-230, to vest title to the severed mineral interest in the surface owners without relying on the doctrine of merger.

Because the plaintiffs are incorrect in contending that the doctrine of merger precludes awarding a mineral interest to the owner of a life estate,[3] there is no basis for their conclusion that Henry lacked standing to pursue his claim. Their first assignment of error is without merit.

## NECESSARY PARTIES

Next, the plaintiffs argue that the trial court lacked jurisdiction because of a failure to join necessary parties. Filing 39 at 18. This is, they say, because Henry did not join others with surface interests as parties. Filing 39 at 19-20.

To begin with, the Court presumes that the plaintiffs mean that the other surface owners were indispensable parties, rather than necessary parties. The Nebraska Supreme Court recently explained the difference:

> Necessary parties are parties who have an interest in the controversy, and should ordinarily be joined unless their interests are separable so that the court can, without injustice, proceed in their absence. Indispensable parties are parties whose interest is

---

[3] What it means to vest such an interest to the surface owners "in the proportions in which they own such interest in the surface[,]" see § 57-230, in the context of a life estate, is a question the Court need not address.

- 6 -

> such that a final decree cannot be entered without affecting them, or that termination of controversy in their absence would be inconsistent with equity. The inclusion of a necessary party is within the trial court's discretion. However, there is no discretion as to the inclusion of an indispensable party.

*Midwest Renewable Energy, LLC v. Am. Eng'g Testing, Inc.*, 296 Neb. 73, 90 (2017). An indispensable party is one who not only has an interest in the subject matter of the controversy, but who has an interest of such a nature that a final determination cannot be made without affecting his rights, or leaving the controversy in such condition that the final determination may be wholly inconsistent with equity and good conscience. *James J. Parks Co. v. Lakin*, 292 N.W.2d 21, 24-25 (Neb. 1980). The question is whether a determination of the controversy *cannot* be had without the presence of other parties. *See Midwest Renewable Energy*, 296 Neb. at 90 (citing Neb. Rev. Stat. § 25-323).

But the plaintiffs' argument that the other surface owners were indispensable runs squarely into the language of § 57-228, which expressly permits a surface owner to sue "on behalf of himself *and any other owners of such interest in the surface*[.]" (Emphasis supplied.) The plaintiffs' contention that the other surface owners are indispensable would render that part of § 57-228 meaningless, contrary to the well-established proposition that it is not within the province of the courts to read a meaning into a statute that is not there or to read anything direct and plain out of a statute. *Stewart v. Nebraska Dep't of Revenue*, 885 N.W.2d 723, 728 (Neb. 2016). A court must attempt to give effect to all parts of a statute, and if it can be avoided, no word, clause, or sentence will be rejected as superfluous or meaningless. *First Nebraska Educators Credit Union v. U.S. Bancorp*, 877 N.W.2d 578, 582 (Neb. 2016). Furthermore, while the doctrine of compulsory joinder is codified in Nebraska by § 25-323, § 57-228, as the more specific statute, is controlling. *See Sydow v. City of Grand Island*, 639 N.W.2d 913, 920 (Neb. 2002).[4]

And more generally, when construing a statute, an appellate court must look to the statute's purpose and give to the statute a reasonable construction which best achieves that purpose, rather than a construction which would defeat it. *Cisneros v. Graham*, 881 N.W.2d 878, 886 (Neb. 2016).

> In general, dormant mineral statutes were enacted to address title problems that developed after mineral estates were

---

[4] The plaintiffs' citation to the quiet title statute, Neb. Rev. Stat. § 25-13,113, is subject to the same principle.

- 7 -

> fractured. At common law, mineral interests could not be abandoned. Permanent or long-term mineral interests could be created during a period of activity in a particular industry, and those interests did not terminate when the activity ceased. As a result, the mineral estate could be held by owners who had long since disappeared from the area, leaving no trace. When the record owner of severed mineral interests could not be contacted, the dormant interests could cloud the titles of surface owners and hinder further development of the mineral estates. The Legislature sought to remedy some of those problems by enacting statutes to reunite dormant mineral estates with surface owners.

*Rice v. Bixler*, 854 N.W.2d 565, 572 (Neb. 2014). It would hardly be consistent with that purpose to permit fractured estates to *defeat* application of the statutory scheme by requiring every owner of a fractured surface estate to be made a party.

Consistent with that reading of the statute, the Court concludes that other surface owners are necessary but not indispensable parties. *See Midwest Renewable Energy*, 296 Neb. at 90. Because their interest in the controversy is such that they only stand to benefit from disposition of the case—that is, they have no rights to be *lost* as a consequence of the decree—then it is possible to enter a final decree without affecting them. *See id.* They are interested in the mineral rights, but have no mineral rights to lose, so they are necessary but not indispensable. *See id.*

Because the other surface owners were not indispensable parties, their absence did not deprive the trial court of jurisdiction.

### STARTING DATE ON STATUTORY PERIOD

Next, the plaintiffs argue that under the statutory scheme, Ila's heirs had 23 years to act from the date of Ila's death in 2005. But their argument is contrary to the statutory scheme, which provides that "[a] severed mineral interest shall be abandoned unless the record owner of such mineral interest has within the twenty-three years immediately prior to the filing of the action provided for in sections 57-228 to 57-231, exercised publicly the right of ownership . . . ." § 57-229. The question is whether the plaintiffs were not just the owners, but the *record* owners of the mineral rights.

The Nebraska Supreme Court's decision in *Gibbs Cattle Co. v. Bixler* is instructive. 831 N.W.2d 696 (Neb. 2013). In *Gibbs*, the surface owner sued a mineral right owner who, it turned out, had died about 15 years earlier. *Id.* at 698. The decedent's wife appeared and contended that she had become the "record owner" of the mineral estate when the decedent's will, which

transferred the mineral estate to her, was probated. *Id.* The question was which public records may be used to determine who the "record owner" of a mineral estate is. *Id.* at 697. The Nebraska Supreme Court explained:

> [The surface owner] argues that the "record owner" of mineral interests may be determined only from the register of deeds in the county where the interests are located. [The decedent's wife] disagrees. She argues that the "record owner" may also be determined from other public records, and in this case, Sioux County's probate records. If [the surface owner] is correct, then the record owner of the mineral interests was [the decedent], who did not publicly exercise his ownership rights in the 23 years before [the surface owner] filed its complaint. As such, the interests would be abandoned and title to them would vest with [the surface owner]. But if [the decedent's wife] is correct, then she became the record owner in 1996, when [the decedent] died and his interests passed to her through his will. If that is the case, then [the decedent's wife] could not have abandoned her interests, because 23 years had not yet passed from her acquisition of the interests.

*Id.* at 700-01. The court concluded that probate records were fair game for determining the "record owner," so the decedent's wife was the record owner and had not abandoned the mineral estate. *Id.* at 703.

But the opposite proved true in *Rice*, 854 N.W.2d 565. Two of the mineral interest owners in that case had inherited Sioux County mineral rights from their mother, whose will had been probated in Alabama in 1993. *Id.* at 569. They recorded "verified claim[s] of interest" in Sioux County, *see* § 57-229(3), before the surface estate owner commenced his action to recover the mineral estate. *Rice*, 854 N.W.2d at 568-70. But the Nebraska Supreme Court rejected their claims that they had exercised the mineral rights, explaining that the record owner of the mineral rights at issue was still their mother. *Id.* at 574.

> There is no evidence that the [mineral estate owners] have filed anything in the records of Sioux County that would prove they are the record owners of the mineral interests located in Sioux County. They claim through the last will and testament of their mother . . . . But the record before us presents nothing in the public records of Sioux County that establishes that her interests were transferred to them.

- 9 -

> It is true that after the case at bar was commenced, the [mineral estate owners] offered certified copies of their mother's will and letters testamentary filed in Mobile County, Alabama. The [mineral estate owners] were required to establish themselves as the record owners before the action was commenced. The plain language of § 57-229 provides that the record owner of such mineral interest has 23 years immediately prior to the filing of the actions provided for in the dormant mineral statutes to exercise publicly the right of ownership. The record does not reflect that the Alabama probate documents through which the [mineral estate owners] claim mineral interests were ever recorded in the office of the Sioux County clerk/register of deeds or filed in the probate records of that county before [the surface owner] commenced this action.
>
> The [mineral estate owners] have not established within the time required by § 57-229 that they are the record owners of the mineral interests in question. Therefore, they have abandoned such interests.

*Rice*, 854 N.W.2d at 574-75.

*Rice*, not *Gibbs*, is apposite here. A "record owner" is a property owner in whose name the title appears in the public records in the county where the interests are located. *See Rice*, 854 N.W.2d at 573. No such evidence was presented to the trial court to establish record ownership for Ila's heirs. Accordingly, pursuant to *Rice*, Ila was still the record owner, and her heirs abandoned their interests. The trial court's ruling was correct.

## RETROACTIVITY

The plaintiffs' fourth and fifth assignments of error present the same basic issue: whether the dormant mineral statutes can be applied "retroactively"—and what, exactly, "retroactive" means in this context.

Necessary background for this issue is the Nebraska Supreme Court's decision in *Wheelock v. Heath*, 272 N.W.2d 768 (Neb. 1978). The dormant mineral statutes were enacted and took effect in 1967. *Id.* at 769. The surface owners in that case sought to terminate mineral rights that had not been exercised for 23 years before the filing of the action, but less than 23 years after the statutes became effective. *Id.* at 771. The Nebraska Supreme Court held that the mineral estate owners had been denied due process, explaining:

> In the case before us, the statute deprives known property owners of their subsurface rights without notice, hearing, or

> compensation. The statute was passed in 1967. It declared the mineral rights shall have been abandoned unless the record owner had publicly exercised ownership rights, as defined in the statute, within 23 years immediately prior to the filing of an action to cancel the severed mineral interest of record. No notice of any nature was given to the record owner of a mineral interest.
>
> A limited statute of limitations was provided. In any action filed within 2 years after October 23, 1967, the owner of a severed mineral interest could enter an appearance and assert his interest. He would then be deemed to have timely and publicly exercised his right of ownership. In other words, the record title owners were required within 2 years from October 23, 1967, to take some affirmative action or lose their property. In all actions filed after October 23, 1969, if no affirmative action had been taken within 23 years, the severed interest is to be considered abandoned. The owner does not have any remedy. The statute, insofar as it attempts to operate retroactively, is unconstitutional as violative of the due process and contract clauses of the United States and the Nebraska Constitutions.

*Id.* at 773-74. In their fourth assignment of error, the plaintiffs argue that *Wheelock* precludes terminating Donald's interest that he inherited in 1938. Filing 39 at 22-24. In their fifth assignment of error, the plaintiffs argue that *Wheelock* precludes terminating the interest Ila acquired in 1938 as it passed to her heirs. Filing 39 at 24. The Court disagrees.

To begin with, it is extremely unlikely that *Wheelock* survived the U.S. Supreme Court's subsequent decision to the contrary in *Texaco, Inc. v. Short*, 454 U.S. 516 (1982).[5] *See Peterson v. Sanders*, 806 N.W.2d 566, 569 (Neb. 2011). (In fact, the *Texaco* Court specifically called out *Wheelock* as being contrary to the Indiana Supreme Court decision that the *Texaco* Court affirmed. *Texaco,* 454 U.S. at 526 n.16.)

---

[5] Although *Wheelock* was premised on both the Nebraska and United States Constitutions, the Nebraska Supreme Court has repeatedly said that the parameters of the state and federal due process clauses are similar or coextensive. *See, State v. Thomas,* 685 N.W.2d 69, 78 (Neb. 2004); *State v. Ryan,* 601 N.W.2d 473, 488 (Neb. 1999); *see also, e.g.*, *State v. Hinrichsen,* 877 N.W.2d 211, 222 (Neb. 2016); *State v. Nelson,* 807 N.W.2d 769, 784 (Neb. 2011); *Scofield v. State, Dep't of Nat. Res.*, 753 N.W.2d 345, 356 (Neb. 2008); *Kenley v. Neth*, 712 N.W.2d 251, 258 (Neb.), *opinion modified and supplemented,* 716 N.W.2d 44 (Neb. 2006); *Hass v. Neth,* 657 N.W.2d 11, 19 (Neb. 2003); *State v. Davlin,* 639 N.W.2d 631, 647 (Neb. 2002); *Marshall v. Wimes,* 626 N.W.2d 229, 234 (Neb. 2001).

But even assuming *Wheelock* retains some vitality, the Court finds no *Wheelock* violation here, because both Donald and Ila had a full 23 years after the enactment of the dormant mineral statutes to exercise their rights. While *Wheelock* clearly precludes extending the 23-year statutory period back before the statutes were enacted, the Court does not read *Wheelock* as precluding abandonment of a mineral estate that was created and last conveyed before 1967, so long as the owner had the full 23-year period in which to exercise his rights.

In sum, the Court has little doubt that if forced to decide the question, the Nebraska Supreme Court would find that *Wheelock* was abrogated by *Texaco*. See *Peterson,* 806 N.W.2d at 569. The Court has even less doubt that the Nebraska Supreme Court would decline to extend *Wheelock* to prevent abandonment of *any* mineral interest that was created and last conveyed before the dormant mineral statutes became effective.

For those reasons, the Court finds no merit to the plaintiffs' fourth and fifth assignments of error: while Donald and Ila acquired interests in 1938 before the dormant mineral statutes were enacted, they had over 23 years after 1967 to act on those interests, and due process was not violated by deeming those interests abandoned.[6]

## CONSTRUCTION OF DORMANT MINERAL STATUTES

The plaintiffs' final assignment of error is that the trial court erred by failing to construe the dormant mineral statutes strictly. They note that a statute in derogation of common law is to be strictly construed, *e.g.*, *ML Manager, LLC v. Jensen,* 842 N.W.2d 566, 571 (Neb. 2014), and contend that the trial court made "a doctrinal-level reversible error[,]" filing 39 at 25.

It is worth noting that the Nebraska Supreme Court was invited to apply that proposition to the dormant mineral statutes, but did not find that interpretive canon "helpful." *Gibbs,* 831 N.W.2d at 703; *see also Fisher v. Heirs & Devisees of T.D. Lovercheck,* 864 N.W.2d 212, 217 (Neb. 2015). But regardless, the plaintiffs' support for their "doctrinal-level" error is limited to the other errors they allege. Their argument does not specifically narrow their general assignment of error, *but see State ex rel. Wagner v. Gilbane Bldg. Co.,* 757 N.W.2d 194, 199 (Neb. 2008), and it raises no issue separate from the others. Having found no merit to the plaintiffs' other assignments of error, the Court rejects this one as well.

---

[6] To the extent that the plaintiffs are suggesting that a pre-1967 mineral estate can *never* be abandoned, even if subsequently transferred, that argument is squarely foreclosed by *Peterson,* 806 N.W.2d at 571.

CONCLUSION

The Court finds no merit to the plaintiffs' proposed assignments of error. Accordingly, the Court concludes that their appeal to the Nebraska appellate courts, had it been perfected, would have resulted in affirmance of the trial court's order. The Court will, therefore, grant summary judgment in favor of the defendants.

IT IS ORDERED:

1. The plaintiffs' motion for summary judgment (filing 37) is denied.

2. Chaloupka, Holyoke, Snyder, Chaloupka, Hoffmeister & Kishiyama's motion for summary judgment (filing 34) is granted.

3. Kishiyama's motion to join (filing 40) is granted.

4. The plaintiffs' complaint is dismissed as to all defendants.

5. A separate judgment will be entered.

Dated this 29th day of March, 2017.

BY THE COURT:

John M. Gerrard
United States District Judge